Thank you, Your Honor. May it please the court. My name is Joshua Cardin here on behalf of the appellant Mark Klamrzynski. This is an employment case and we contend that summary judgment was improvidently granted for three reasons. Mainly that the court below went beyond the record to decide that my client had was employed at the college, that the court construed the evidence in a way that favored the defendant both in deciding temporal proximity and in looking at the evidence on pretext, and that finally the court did not apply the what I'll call the the Bostock but-for standard, which basically requires courts evaluating the but-for test, including in ADA claims, that we change one thing at a time and if the outcome changes that we found a but-for cause. And our position in this case is that Mr. Klamrzynski's May 28th email, which the court did not spend below, did not spend much time on, but involved him seeking paid sick time for his immediately preceding period of disability after his heart attack. And by spending the time to to ask his boss, Dr. Davidoff, about why he hadn't gotten paid sick time, the record shows that she forwards that email to someone else who responds and says, basically, you don't get sick time and your contract ended when we had to find somebody to cover your class. Mr. Klamrzynski, who up to that point had taught for, I believe, 35 years, 100 unbroken semesters as an adjunct faculty member, and suddenly he's being told that not only is his contract being ended in that period of time after he had his heart attack. Was it a lot of sick time? No, it was 28 hours of sick time, but it was important to... Let me set up the legal framework, as I understand it, to see if we disagree with each other. It doesn't seem to be any dispute in this case about the first two elements of the McDonnell-Douglas shift, burden shifting. That's correct. So we get to the question of whether or not the reason that they gave for terminating your client was pretextual. That's right. And our case law says that mere proximity between the adverse employment action and the heart attack, in this case, is not enough to get you to the jury. So tell me what more you've got. Your Honor, I think it's two things. One is the temporal proximity can be enough and frequently is enough in lower courts when it's really close. Right, but in this case it's not really close. It's three and a half months. Well, and that's where I disagree with the trial court below, Your Honor. I don't think it's just three and a half months. That's where I'm saying the judge below interpreted the timing in a way that favors the defendant. So tell me when the adverse employment action occurred in your view. From defendant's statement of facts, Your Honor, this is on the record at page 70, the defendant even argues that after she gets the email from Mr. Klemersinski and then says, I got this email. It's less than unpleasant. We should get HR involved. Then Dr. Davidoff decides, I'll let him finish his current courses, the ones he's just now back teaching in May, but I'm not going to invite him to teach after the summer. So in your view, the adverse employment action occurs not when he's fired, but when somebody decides that they're fired, not renewed. He's not fired, non-renewed, but when somebody decides that he will eventually be non-renewed? That's correct, Your Honor. Tell me what case you think supports that position. The Ninth Circuit case, I believe is it Head v. City of Los Angeles? The one that basically says this is an expansive circuit. We take an expansive view of what an adverse action is. The fact that she decides to take the adverse action and doesn't communicate to him ever that she's taken that action. Don't these facts, the ones that you're articulating right now, actually, I think, make your argument even more weak? I mean, what we have here, emails were sent that were perceived by the school to be offensive and there's clearly information to suggest that the school had discussions with your client about the fact that these emails were sent. Then you have the heart attack and what happened next wasn't a firing. I mean, I could see your case would be stronger if you had a situation where emails, then the disability or the heart attack, and then a firing. But here, actually, what happened was that they let him finish out the semester and the burden shifted to you to put forward evidence to suggest that that was pretextual. In fact, what we have is evidence to suggest that they did not take action immediately based on the heart attack there was. They're pointing to these bad emails and saying, look, we're gonna let you finish out the semester, but you can't come back. We're not renewing the contract. And I only disagree with that, Judge Desai, because the decision of non-renewal is the adverse action. It's not when it's ultimately communicated. He doesn't find out that he's actually been The evidence, it does not give us an exact date, but the judge below gave the defendant the benefit of the doubt and said it wasn't made until August when she clicked uninvite to the mandatory faculty meeting. So what is your contention reading the evidence in the light most favorable to you? That it was made when defendant argues it was made, which is right after the May 28th email is sent and HR gets involved. And so beyond that, Judge Hurwitz asked, I think, a really important question, which is what beyond the temporal proximity are you arguing is the basis for raising a fact issue with respect to the pretext? That I can show that if the employer's explanation of the reasons is unworthy of credence, that is enough to show pretext. Well, but see that's it here. I'm not sure you're making that argument in the briefs, but it seems to me they say I've looked at at least one of the emails. By the way, it's a great lesson of by what not one number to respond to all for the law students in the audience. But one of the emails seems pretty over the line. You have an at-will employee who's basically said to people, you're idiots and you should all be fired and you all ought to go get therapy or something like that. I have an at-will employee like that. I might decide I don't want him to come back. In context, Your Honor, and this is not include, again, a way of minimizing plaintiff's evidence. The context for that email was having received nine seeming, he testified and it's in the record, that he thought this was another hack. The district had been hacked and had to, it was something like 28 million dollars where employees payroll records were accessed from the inside. It was an internal hack. Well, he may have an explanation, but I'm not sure why that shows that their reason is pretextual. They say, we don't want to have somebody who engages in this kind of inappropriate communication. You don't have to show cause, after all. They just have to have a non-pretextual reason. This is inappropriate communication. Whether he was provoked or not, we just don't want to have a person like this on board anymore. But that gets to the pretext. If that's true, you know, that's before his heart attack. You're still letting him teach after the heart attack? Doesn't that cut the other way? I mean, if they really meant to discriminate against him because of his heart attack, why did they, by common, you know, they gave him sick leave and he brought him back to teaching. It seems to me it wasn't the heart attack that was the, that this case shows was the cause of the termination. It was this email. And that's the difficulty, Your Honor. Again, nothing happens to him. He has a conversation. There's no discipline. There's nothing put in his file. He has a conversation. Well, do they have to do that? They just, they have to make a decision every year with at-will adjuncts whether to bring them back. And now they've got an at-will adjunct who has made intemperate remarks in the email. That's true. Whatever the provocation. And so why, why can't they say at that point, we don't want that adjunct back because he's disruptive? It's not that they couldn't have. It's that they didn't say it then. They don't say it until after his, even the, even the district does not suggest that the decision was made then. The district says the decision was made after his email where he's talking about why is he not getting sick leave for the for the period of his disability. He doesn't send that email, by the way. And the court also erroneously states that there was a system in place that he had to screen his emails with Dr. Davidoff. There was no system put in place before his heart attack. That's an incorrect reading of the record by the district court. It certainly sounds that way. So why was it sent to Lilly in that case? Excuse me? Why was it sent to Lilly's Dr. Davidoff? Yes, because as Dr. Davidoff herself admits, my client approached her on May 23rd because his paycheck was shorted. He didn't get paid any of the sick time for the period of his and he does that. That's as far as it went. Well, he, I mean, candidly, he raises the specter of discrimination and paid sick time violation. But most importantly, he talks about how is it... There's no retaliation claim in this case. Correct. No, there's not. But it's, it's not this isolated email where he's just upset about nothing. He's, he's had a heart attack. He's missed work and they're telling him what he characterizes as nonsensical explanations for why, when he's on the way to a work event, he shouldn't get paid sick time to cover for his heart attack in the period of his disability. He talks about the stints that get put in. Those go directly to the heart of his disability. He is raising that issue and then the district says the decision's made not to bring him back anymore. So you're saying that besides temporary, the temporal, temporality, that it's just not, it doesn't, it's not plausible that they fired him because of this email? Is that, is that your other evidence of pretext? I'm saying that it doesn't match, it doesn't match the, the communication. The after-the-fact email to Mr. or Dr. Pruitt from Dr. Davidoff that says, oh, here are the three things that are leading me to this conclusion. By the way, none of which have been discussed with my client ever again. There's nothing in the record that another conversation... But those valid reasons for terminating someone. They are disputed reasons. That's, that's the point. The way to dispute that, I mean, typically how this works is if you're gonna put forward evidence to show that the reason was pretextual, you would, for example, try to discover that there were a number of people in the district who send emails that are rude and, and, you know, not using the best language and that the district treats those people differently. For example, that there are four other faculty members who have before replied all and said rude things but they were not fired, but, but my client had a heart attack, did those same things, and then that, and then he was fired. I mean, isn't, isn't that the kind of evidence? Not just that you disagree with their reason, but that there's evidence to suggest that their, the reason they gave them was pretextual. It's, it's the evidence that says her written justification in the record, which is at 141, is in fact not correct. She's, she says things like, I have three occasions. There's one, there's one occasion. She exaggerates and stacks these three events as if they hadn't already been dealt with. She admitted at her deposition, the first email in January, Mark had some good points. He made some good points. This was an emergency situation with course materials that was going to affect the kids that he was going to be teaching for his 99th semester. The, the hacking email, she, she says, you know, please be more professional. There's no evidence that he was ever going to have a problem in that arena again. The next email is about his disability, and then the decision is made. He's not coming back. A decision, another point of this pretextual argument is, not only is he not coming back, we're just not going to tell him. He never finds out, even in response to... Why does that make a difference? He's still teaching. They want, they've made a decision to keep him for the rest of the I don't want to have a really disgruntled teacher on my hands. We'll let him know at the point when we are supposed to be notifying people of these decisions. And, and, and that's true, your, your honor, and I see I have only about a minute 20 left. I'd love to save a little bit for rebuttal, but your honor, the, the point is we not telling him that the adverse decision has been made does, does not affect the temporal proximity arguments to say the decision was made after the last email, and there's nothing in the record to show that it was made any later than that. The court improperly gave the defendant the benefit of the doubt in that situation, and not the plaintiff. Thank you, your honor. Mr. Pierce. Thank you, your honor. May it please the court, Justin Pierce on behalf of the is a run of the mill employment discrimination case without a lot of complexity. This court has many times articulated what the standard of review is and how it evaluates these types of cases. This falls right into the McDonnell-Douglas framework of present a prima facie case. The district gets the opportunity to present a when that happens, the Supreme Court case law in this court has recognized that the any presumption of discrimination or anything drops off at that point in time. And now the burden shifts back to the plaintiff to demonstrate that the reasons that were presented with specific and substantial evidence are unworthy of credence. That's where I think as we address the timing issue, I'd like to talk about that because this court's precedent and timing can help a plaintiff meet a prima facie case on the causation element. It can. So if the decision is made right after something happens, that then can can make the prima facie case of causation. But once the defendant then presents legitimate non discriminatory reasons now, when the burden shifts back to pretext, the timing issue doesn't matter anymore. Let's just say I agree with you that timing alone, the temporal proximity alone is not enough. And I read in the district's briefs that that's all that they point to. But you know, your friend on the other side today argues in their briefs also talk about sort of this totality of circumstances. So not terminating his summer contract, inviting him to the fall introduction session, the fact that he had a history of teaching with the district for 35 years, that's not an issue with the delay of his medical leave, even though there's no retaliation claim, but the sort of delay there. Why aren't all of those things together enough to raise a fact issue since we're at the summary judgment stage? So Judge Desai, the question, and I think it's come up in this court's questioning as well, which is that he sends the first email in and it wouldn't have done anything. But then in April, before any medical issue happens, we have the more rude, we would say, email that, by the way, this court does not have to set aside logic and the suggestion that came up late in the proceedings. Well, I was concerned about a hacker. It doesn't really matter, right? It doesn't. He's an at-will employee. They can terminate him for any reason. So it doesn't really matter what his intent was in sending the email, right? Yes. So, Your Honor, at that point in time, he sends that email. The evidence is undisputed that concerns are being discussed. In fact, he says, well, he wasn't disciplined. There's an email in the record that Dr. Davidoff sends to him and says this is completely inappropriate. We're not going to be having this sort of thing go on. So we know that the district is concerned about this, but he has the summer contracts are already in place by that point in time. Is he a danger to anybody? Is it a problem to let him continue that forward? I mean, it's a difficult thing to turn around. In that second email, there was an invitation to participate in the new curriculum, which is kind of counter evidence that he was on the outs. That actually began, though, prior to anything happening. This was one of the first things that Dr. Davidoff did when she became the supervisor in late 2018 was this curriculum issue that was being discussed. In fact, that's why the January email happened. He was upset in January that this curriculum that they're working on is all of a sudden going to get changed. So that was already in process. It wasn't something that came up afterwards as if, hey, so the suggestion would be, well, he's still being invited to do these things. Is that some evidence that they hadn't yet decided to non-renew him? I believe it's evidence that the decision hadn't been completely finalized. I want to get to what your friend was arguing. He says, well, but the decision was finally made after, it's a May email, but it's never sent because the professor is now told before you send the emails, review them with your supervisor because you got in hot water with the last one. But when that is shown to, after that's shown to the supervisor, they say that's when they decided to terminate him and he had asked for sick leave. He had mentioned sick leave in that one and was complaining about it. So why doesn't that create a fact question about whether he was fired because he had this heart attack and was asking for sick leave? So the sick leave issue, I would set aside a little bit differently only because there's not a sick leave question in this case, claim in this case. So then the real question is, how is that not evidence of pretext? Because again, we're talking about pretext, that the real decision was based on him having this heart attack. Remember, at the end of the day, this still requires intentional discrimination based on a disability. Something in the record, I agree completely with Judge Desai's point that typically in a case like this, what you would see is, well, there were a whole host of other employees who were sending very similar emails. They never had anything happen to them. No problems there. What's the difference between them and him? Well, he has this disability. Okay, well, that starts raising a question. Or even more, what you would see in a case like this is, hey, somebody overheard Dr. Davidoff saying, oh man, this guy had this heart attack and I don't know what we're going to do now. We better get rid of him. Or an email that says something that ties the decision to the disability, not to just some speculative question of, well, it could be this other thing. And that's what he's tying this to. And the summary judgment standard, for very good reason, is you've got to present specific and substantial evidence. That's the standard. Why? Because otherwise, of course, every employee that gets terminated who believes that it was something is going to dispute the reason given. They're going to say, oh, I don't believe that at all. Well, that's not enough. You've got, well, why don't you believe it? What's the specific and substantial evidence that it was actually your disability? Where's the evidence that Dr. Davidoff doesn't want somebody that has this disability working in her department? I want to ask you a question about that. And I must admit, neither side addresses it. Is it apparent that having had a heart attack from which you're able to return to work two weeks later is a disability? Yeah. So we didn't argue the point. Nobody argues it. So let's not make it part of this case. It then leads to my next question. Mr. Cardin says, well, he was really fired because he was complaining about sick leave. Let's assume that's right, that that was really their motivation for firing him. I know you don't think that's the case. If that's the case, does that establish a violation of the American with Disabilities Act? No, it is not, Your Honor. And of course we dispute it and it's never been argued. But the real question is, was he terminated because of, and that's the standard, because of the disability that he has? Not because. That's why I asked the question. Let's assume that he wasn't terminated because he had a heart attack. He was terminated because he complained about the treatment of his sick leave requests. Sure. Does that violate the American with Disabilities Act? It wouldn't, Your Honor, because then the point would be, let's say behind the scenes that they get this email. That's a different claim. That's a retaliation claim, right? That would be a retaliation claim. And there's a state law provision for that. If he had a claim for that, there's a provision to protect that. He never asserted that for good reason. I guess I'm asking the question a different way, and I'd like Mr. Cardin to address it in his limited time when he gets back up. But let's assume there's a fact question about whether or not the plaintiff was fired because he requested sick leave. That still doesn't establish that he was fired because he was disabled, does it? No, and that was what I was going to get to, is if behind the scenes, if they got this email and they said, well, what a jerk. He's upset about this sick leave thing. And we think that there's no sick leave that he's, whatever it is, that has nothing to do with whether or not he's being discriminated against because of a disabling condition, which is apparently a heart attack condition. Now, the reason we didn't address it on summary judgment, well, obviously you have to make a lot of decisions as to where your strongest arguments are, for summary judgment. For summary judgment, if the case were to go beyond, which we, of course, do not believe it should, but he had a condition that lasted for a couple of weeks, three weeks, and there's no evidence in the record that he was, other than those three weeks, that there was any residual condition or anything that happened. I mean, I don't want either side to waste much time on it. It's a little strange because his contention was, his contention is, in effect, I was fully able, ready, and willing to keep teaching. And so he's not, it's not really the typical disability case where somebody says, I do have something you need to accommodate. He's not asking for an accommodation. Your Honor, it's never an accommodation requested, never an accommodation needed. And so we bring it up in our briefing simply to show that it also defies logic on the pretext analysis that, oh boy, the district must have just really wanted to get rid of this guy because they didn't want to have to deal with a guy with a disability. In what way? Deal with him how? There wouldn't have been any, there was no residual effect. There was no problem. So what you would have to show that somehow Dr. Davidoff just hates people who have heart conditions. I mean, that's what the evidence would have to show. There's not a shred, much, I mean, the standard for summary judgment requires more than a scintilla. Well, this isn't even a scintilla of evidence that his disabling condition is what caused this. And really, at the end of the day, what our argument here would be is that if the district isn't allowed to take action against somebody and say, you know what, we don't want people who are engaging in rude behavior toward their coworkers and others working for us, that's a problem. We believe that that is an absolute legitimate, nondiscriminatory reason for taking that action. Can I ask a question? You opened up by saying that temporality or proximity is not even a factor in pretext. Is that a matter of law? We can't even consider proximity? Yes, Your Honor, that is right. If you have a case that says that, I'd love to hear it. I thought our cases say that mere proximity is not enough to get you to, well, let's assume that he was, he called in and said, I had a heart attack. And the next day, and the supervisor said, well, then you're fired. Right. Wouldn't that be enough to establish that he was fired because, wouldn't that be enough? It actually would not, Your Honor. Here's why. So what it would do is it would raise a presumption or a prima facie case that, wow, that temporal proximity sure looks like that was the cause. The burden shifts to the employer. And now the employer says, I know he said this yesterday, but after he said that, he went and assaulted. What if before he said? See, I think in some cases extreme proximity may be enough to create a jury question on the issue of pretext. Don't you agree? This court's precedent, I wish I could cite the case, I'm sorry, but it really is, the precedent is that the question, that might look very strongly like cause, but then if the employer says, we know this looks really bad, but here's the real reason, the test is still the same, it's, okay, now let's go back then. Okay, they said it's this. You've got to show that this reason they've given is pretext. And you can't say, but it was the next day. You've got to say, well, okay, I realize it was the next day, but why is their reason wrong? And that's what the standard is. And, Your Honor, in my last minute, I do want to bring up the issue of we do believe that the but-for causation standard, which I'm glad to hear that Mr. Cardin has acknowledged now, there is case law in the Ninth Circuit. Well, I think everybody agrees it's a but-for. But what I was going to say is at the summary judgment phase even, that the but-for causation is a factor in the prima facie case. Now, we didn't extensively argue this, but we put a paragraph in our summary judgment to preserve the argument that really this court could also affirm on the failure to make out a prima facie case because of the but-for standard. So I'm trying to understand how this applies. Let's assume a different record. There's a memo in the Chancellor's office that says, let's fire him because he's disabled and he's also a jerk. Is that, have they violated the ADA? I would probably, I would certainly create a jury question, I think, Your Honor, under the but-for standard, because I do agree the Bostock case. What if the memo then went on and said, if he was only a jerk, we would have kept him? If he's disabled, then we shouldn't. Then have they violated the act? First of all, Your Honor, we provide better legal advice to our clients than that. I don't think there would ever be a memo. However, that would go to the Bostock but-for analysis. Wouldn't it establish at least a jury question on pretext? It would establish a jury question on pretext for sure. And then the question would go to the but-for. So the jury would then have to make a factual determination. As to what, as to whether but-for that disability, would this decision have still happened? That is simply not the evidence here. There's not specific or substantial, much less really any evidence, that the decision that the district made was really pretext to be able to get rid of somebody who had a disability. We would encourage the court to uphold the district court's grant of summary judgment. Thank you. Thank you, Mr. Pierce. Put two minutes on the clock. We took Mr. Pierce over. Thank you, Your Honor. Do you mind addressing that first, that point we left off? Because you did mention BOSOC for the first time in your opening argument, but that's not what you argued in your brief. You asked for actually a motivating factor. In the opening brief, that's correct, Your Honor. The reply brief does cite Bostock. So that was raised in the briefing. To Judge Hurwitz's point, if there had been a memo that said, we're firing this guy because he's disabled and because he's a jerk, I think we have a Bostock but-for cause. The problem here, and there is precedent in this court that says— Well, at least you have a fact question. We have a fact question. We don't win on summary judgment on that basis, but we have a fact question. And that's all this is about, is to say the judge below read all of the evidence and said the court is not persuaded. That's not— But can you respond to the issue I raised to Mr. Pierce? Let's assume that you produced sufficient evidence from which a reasonable finder of fact could infer that your client was fired because he complained about sick leave. How does that show—I mean, does that establish a violation of the ADA? By itself, no. Does it create an issue of fact for the jury? Why does that create an issue of fact about whether their other reason was protection? Because if there's no heart attack, there's no need to fight about sick pay. It's a but-for cause in the sense that the issue raised by Dr. Davidoff with my client before his heart attack is addressed. It's closed. She still brings it up in August, but that's been addressed. He has a heart attack, and now he's finding out from the person that Dr. Davidoff forwards the email to, your contract's ending, and that's why you don't get sick pay. He is astounded. He waxes eloquent about how this is a violation of federal and Arizona law. He talks about the stints, the time in the hospital. That was the disability. That was the disability period. Shields v. Credit Bank—this will be my last thought. Shields v. Credit Bank last year from this court says the duration is irrelevant. You look at severity. Duration can be one factor, but that was a period of disability. He complained about it. He brought it up again, and he got fired. The decision was made to not bring him back right after that. I ask the court to reverse. Thank you, Your Honor. Thank you, Mr. Gordon. Thank you, Mr. Pierce. This case will be submitted. The court will be adjourned, and hopefully the three of us will return to meet with those who want to remain in a little while. All rise. The court stands in recess.
judges: HURWITZ, BUMATAY, DESAI